

**SIGNED this 31st day of December, 2015**

_____
Shelley D. Rucker
**UNITED STATES BANKRUPTCY JUDGE**

_____

# IN THE UNITED STATES BANKRUPTCY COURT FOR
## THE EASTERN DISTRICT OF TENNESSEE
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **Troy Shawn Hurt** | ) | **Case No: 1:15-bk-12294-SDR** |
| **Tara Jo Hurt** | ) | **Chapter 7** |
| | ) | |
| **Debtors** | ) | |
| | ) | |

## MEMORANDUM

The trustee has filed an objection to an exemption claimed by Debtor Tara Jo Hurt in the funds on deposit in a SunTrust account and a motion for the turnover of those funds under 11 U.S.C. § 542. The basis of the Trustee's objection to the exemption is threefold. First, he argues that because Mrs. Hurt obtained the funds by a transfer from her husband which was allegedly a fraud on his creditors, the transfer may be recovered under §§ 548 and 551. Second, the Trustee

1

contends that the Tennessee personal property exemption statute does not allow an item obtained by defrauding another to be exempted. T.C.A. § 26-2-103(b). Finally, the Trustee contends that Mrs. Hurt's claim of exemption was fraudulently asserted and that he may object to the claim under Fed. R. Bank. P. 4003(b)(2). If the objection is sustained, then the Trustee seeks to have the funds turned over to the estate for the benefit of the creditors of Mrs. Hurt's estate. 11 U.S.C. § 542(a). The debtors respond that they did not intend to make a fraudulent transfer and, at most, they were engaged in exemption planning. The debtors further contend that they disclosed the exempted property and there is no issue of fraudulent concealment.

These are the court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052. This court has jurisdiction over this matter under 11 U.S.C. §§ 1334 and 157(b)(2)(B).

**I. Facts**

Section 522 requires the debtor to file a list of property that the debtor claims as exempt from property of the estate. "Unless a party in interest objects, the property on such list is exempt." 11 U.S.C. § 522(l). Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose before the commencement of the case with certain limited exceptions which do not apply here. 11 U.S.C. § 522(c).

Specifically, the Trustee objects to Mrs. Hurt's exemption of $7,730.63 in funds in a bank account at SunTrust Bank which was opened three days before she filed this bankruptcy case with her husband Troy Hurt. The funds in this account are directly traceable to the proceeds of a sale of real property which Mr. Hurt and his brother inherited from their mother in 2012. The house was slow to sell, but a sale was finally closed on May 27, 2015. Mr. and Mrs. Hurt took the check for the proceeds of $15,461.26 (Tr. Ex 5), which was payable only to Mr. Hurt, and

opened two accounts at SunTrust on May 27, 2015. (Tr. Ex. 3 and 4, Account Statements from SunTrust Bank.) One account was in Mrs. Hurt's name and the other was in Mr. Hurt's name. Neither was a signatory on the other's account, and the accounts did not allow the parties to transfer funds between the accounts.

Mr. and Mrs. Hurt had previously had two accounts at a credit union. They each believed that these accounts were in their individual names, but the accounts were set up in such a way that each of them could transfer funds to the other's account. Despite the Hurt's belief that the credit union accounts were only in one name, the credit union statement admitted at trial showed both names on the statement. (Trial Ex. 3, DuPont Credit Union Statement for June 2015.) The failure to set up the new accounts in the same manner was an oversight based on Mr. Hurt's testimony.

On May 30, 2015, the Hurts filed for relief under Chapter 7. Mr. Hurt testified that they had been experiencing financial problems for a long time and had sought bankruptcy counsel some months before they filed. Tennessee provides no exemption for real property owned by a debtor which is not his residence, but it does allow a $10,000 personal property exemption. T.C.A. §§ 26-2-103(a) and 26-6-101. Mr. Hurt admitted that they waited until the real property had been sold to file bankruptcy although he did not recall any specific discussions with his bankruptcy counsel about exemptions or how to maximize them. Mrs. Hurt recalled only that they discussed exemptions. In the initial bankruptcy filing, each debtor claimed personal property exemptions in the newly opened SunTrust accounts on their Schedule C under T.C.A. § 26-2-103.

The Trustee inquired about the SunTrust accounts at the meeting of creditors which was concluded on June 30, 2015. He discovered the details of the real property sale and the source of

the funds in the two accounts which were listed on Schedule C as being owned jointly. The debtors explained the inheritance and the sale by Mr. Hurt's brother as the executor for the estate. The Trustee timely filed an objection to Mrs. Hurt's claim of an exemption in the account on July 20, 2015. Fed. R. Bankr. P. 4003(b)(1).

## II. Analysis

A. The Basis to Object to Exemptions under Section 522

With respect to the first basis to disallow the claim, the Trustee contends that Mr. Hurt deliberately transferred $7,730.63 of the proceeds of his property to his wife by creating a separate account for her. She claimed these funds as exempt. At the same time Mr. Hurt created an account for himself which he claimed as exempt and to which the Trustee has not objected. The Trustee contends that Mrs. Hurt's account was created to allow Mrs. Hurt to claim an exemption to which she would not otherwise have been entitled. The conversion of the real property to personal property converted a non-exempt asset into a partially exempt asset in the hands of Mr. Hurt. It was only partially exempt because the total of the sale proceeds exceeded the $10,000 Tennessee personal property exemption. His subsequent transfer to his wife resulted in all of the personal property falling within their combined personal property exemption limits so that none of it was available to either spouse's creditors. The Trustee contends that this series of transfers resulted in a fraudulent transfer and that Mrs. Hurt should not be allowed to retain the funds as exempt.

There was no evidence that any creditor was seeking a judgment or trying to execute on the real property at the time these transfers were being made, nor was there any evidence of representations made by the debtors to any creditors about the availability of the property to pay those creditors their debts. The sale was disclosed in Schedule B, and the exemptions were

claimed in Schedule C. The debtors were candid and forthcoming at the first meeting of creditors about the transaction. (Tr. Ex. 2 pp. 1-3 and 5-7, Transcript of 341 meeting of creditors.)

In *In re Seymour*, 2010 WL 9597117, cited by the Trustee, the debtor transferred a truck titled only in his name to his wife, who was a joint debtor, just days prior to bankruptcy so that each debtor could claim a vehicle as exempt. The court found that a transfer of property for the purpose of maximizing a debtor's exemptions is allowable absent extrinsic evidence of fraud.

> In a denial of discharge action involving a transfer of property between spouses and claim of homestead exemption in bankruptcy, the Fourth Circuit Court of Appeals held: "Mere conversion of property from non-exempt to exempt on the eve of bankruptcy—even though the purpose is to shield the asset from creditors—is not enough to show fraud." *Ford v. Poston* (*In Re Ford*), 773 F.2d 52, 54 (4th Cir.1985) (citing *First Texas Savings Ass'n v. Reed,* 700 F.2d 986, 991 (5th Cir.1983)). However, this right of conversion is qualified if there is "*extrinsic* evidence of actual intent to defraud creditors." *Id.* (citing *First Texas Savings Ass'n,* 700 F.2d at 990). "Extrinsic evidence of fraud . . . can be comprised of conduct intentionally designed to materially mislead or deceive creditors about a debtor's position; conveyances for less than fair value; or continued retention, benefit, or use of property allegedly conveyed together with evidence that conveyance was for inadequate consideration." *In re Weldon,* 184 B.R. 710, 713 (Bankr.D.S.C.1995) (citing *In re Johnson,* 880 F.2d 78, 82 (8th Cir.1989)).

*In re Seymour*, No. CV 10-00377-JW, 2010 WL 9597117, at *3 (Bankr. D.S.C. Aug. 16, 2010). In that case the court found the extrinsic evidence of fraud and disallowed Mrs. Seymour's exemption in the vehicle transferred to her.

The Trustee contends the Hurts' actions are similar, and the result should be the same. This court finds some distinctions. Unlike Mr. Seymour, who chose to put the transferred truck in his name when he purchased it – an action which evidences intent to hold the property in only his name – Mr. Hurt was not the individual who placed the title of the real property in his and his brother's name. The ownership and the subsequent sale proceeds resulted from an inheritance. When the property sold, Mr. Hurt deposited the funds into two accounts. This was the first time Mr. Hurt evidenced his intent with respect to this property, and he split it 50/50 based on his

5

assumption that it was joint marital property. In *In re Seymour*, the truck was a vehicle Mr. Seymour used and intended to continue using. In this case, there was no proof that Mr. Hurt was benefitting from the property until it was sold by the executor of his parents' estate. After he transferred half of the funds to her, she used the proceeds to pay some prepetition expenses of Mr. Hurt's including car payments, hospital bills for their child and the purchase of a lap top computer for the family. Had Mr. Hurt used the money in the same way and made the payments to the creditors directly prepetition, those creditors might have received preferences but there would have been no issue of fraudulent transfers.

Even recognizing that this case differs from Seymour, the court does find that Mr. and Mrs. Hurt were engaged in exemption planning. They did wait to file until they had converted the real property to personal property. However, exemption planning, even bad faith exemption planning does not necessarily justify disallowance of the exemption. *Ellmann v. Baker*, 791 F.3d 677, 682-83 (6th Cir. 2015) (discussing *Law v. Siegel*, 134 S. Ct. 1188 (2014)). *See also In re Elliott*, 523 B.R. 188, 189 (B.A.P. 9th Cir. 2014); *In re Gress,* 517 B.R. 543, 547-48 (Bankr. M.D. Pa. 2014); *In re Gray (Gray v. Warfield)*, 523 B.R. 170, 175 (B.A.P. 9th Cir. 2014); *In re Scotchel*, 2014 Bankr. LEXIS 3640, 2014 WL 4327947, at *4 (Bankr. N.D. W. Va. Aug. 28, 2014).

The Trustee argues that this case involves more than just Mr. Hurt's taking advantage of exemptions available to him. The debtor went a step further and transferred his property to his wife in order for her to have property to exempt. He argues that exemption planning involving fraudulent transfers should be treated differently. The court has found support for this position.

> In two-party situations such as this, the rule condoning property conversion from non-exempt to exempt property is inapplicable if the elements of a fraudulent conveyance are determined to exist. . . .

6

*Butz v. Wheeler*, 17 B.R. 85, 89 (Bankr. S.D. Ohio 1981) (husband conveyed his tax refund to his wife).

In the past year there have been significant rulings in cases involving a debtor who claims an exemption in bad faith or who has engaged in misconduct. An objection based on bad faith or concealment of the property can no longer be sustained absent specific statutory authorization. *See Ellmann v. Baker*, 791 F.3d 677, 682-83 (6th Cir. 2015) (discussing *Law v. Siegel*, 134 S. Ct. 1188 (2014)). This holding requires the court to address whether the two party fraudulent transfer exception to exemptions still applies in light of the recent rulings by the Supreme Court and the Sixth Circuit Court of Appeals. Is Mrs. Hurt's claim of exemption in funds she obtained from her husband immediately before filing a fraudulent assertion of an exemption or such bad faith that the Trustee may disallow it? If that action can be the basis for an objection, what must the court find to make such a determination?

In *Law v. Siegel*, the Supreme Court noted in dictum that the debtor maintains the power to choose which exemptions she may invoke, but once she has done so, the court may not refuse to honor that exemption without a statutory basis for doing so. *Siegel* at 1196. The Court went on to note that the Bankruptcy Code does not grant such authority based on a debtor's fraudulent concealment of assets alleged to be exempt or other bad faith conduct. *Id.* The Court reasoned that given the Bankruptcy Code's meticulous enumeration of exemptions and exceptions to those exemptions, bankruptcy courts lack the ability to create additional grounds for objecting to exemptions. *Id.*

Before *Siegel*, mere conversion of non-exempt assets into exempt assets did not, by itself establish fraud. *Noland v. Wadley*, 263 B.R. 857, 859 (Bankr. S.D. Ohio 2001). As noted above, some courts had found an exception where extrinsic evidence of fraud existed beyond the mere

conversion of assets. *Id*. at 860. Such extrinsic evidence has included a change in long held ownership only days before filing, or concealment of an asset or sales to a third party while the debtor continued to use the property. *Noland* at 860. The dictum in Siegel raises questions about the viability of those exceptions.

In 2015, the Sixth Circuit Court of Appeals appears to have answered the question by adopting the Supreme Court's dicta. *Ellmann v. Baker* 791 F.3d 677 (6th Cir. 2015)[1]. The trustee in *Ellmann* had objected to an amended exemption claimed by a debtor in a reopened case. The trustee objected to the exemption. The court held that "under *Siegel*, bankruptcy courts do not have authority to use their equitable powers to disallow exemptions or amendments to exemptions due to bad faith or misconduct." *Id.* at 683. Based on the Sixth Circuit's ruling, this court may not deny a debtor an exemption for mere bad faith or even fraudulent concealment without a statutory basis for doing so. In light of clear language in *Ellmann* prohibiting disallowance on the basis of bad faith or misconduct, the court finds that there is no fraudulent transfer exception based on the bankruptcy court's equitable powers that would provide a basis for disallowance of an exemption. The court must find a statutory basis for any disallowance.

The Trustee also contended at the hearing that Fed. R. Bankr. P. 4003(b)(2), which allows a trustee to object to a fraudulently asserted exemption provides him with the necessary basis for his objection. Noting that the Supreme Court did not address this rule in *Siegel*, he contends that it remains a basis for an objection. This argument was successful in *In re Woolner*, 2014 WL 7184042 (Bankr. E.D. Mich. Dec. 15, 2014). In *Ellmann*, the Sixth Circuit cited *Woolner* as a case that rejected the dicta in the *Siegel* case. *Ellmann*, 791 F.3d at 682. Contrary to

---

[1] The court in *Ellmann* addressed a claim of a wild card exemption under 11 U.S.C. § 522(d)(5) in a case arising in Michigan. The Sixth Circuit found that section 522 contained no such exception for concealment of a cause of action.

the analysis in *Woolner*, the Sixth Circuit found that the *Seigel* discussion of the need for a statutory basis for disallowance was mandatory authority and that no equitable exceptions existed within the bankruptcy court's authority.

This court recognizes that the Sixth Circuit did not address Rule 4003(b)(2) specifically. The court has found one case which has addressed the Trustee's argument that Rule 4003(b)(2) provides an independent basis for objecting to the exemption after *Siegel* and *Ellmann*. *In re Bogan*, 534 B.R. 346 (Bankr. W.D. Wis. 2015). That court rejected the *Woolner* argument that the rules can provide an independent basis for disallowing an objection.

> Bankruptcy rule 4003(b)(2) provides "The trustee may file an objection to a claim of exemption at any time prior to one year after the closing of the case if the debtor fraudulently asserted the claim of exemption. . . ." FRBP 4003(b)(2). But "[a]s a general matter, the Code defines the creation, alteration or elimination of substantive rights. . . the Bankruptcy Rules [only] define the process by which these privileges may be effected." *In re Hanover Indus. Mach. Co.,* 61 B.R. 551, 552 (Bankr.E.D.Pa.1986). Thus, the bankruptcy rules cannot authorize the court to act in absence of a code provision creating the right. See *In re Gee,* 204 F.3d 1115 (5th Cir.1999) ("Under 28 U.S.C. § 2075, the rules the Supreme Court was given the power to promulgate are not to 'abridge, enlarge, or modify any substantive right' "); *In re Stoecker,* 179 F.3d 546, 552 (7th Cir.1999) ("But in a conflict between the Code and the rules, the Code controls, 28 U.S.C. § 2075; *In re Pacific Atlantic Trading Co.,* 33 F.3d 1064, 1066 (9th Cir.1994)"). If Congress wanted to give bankruptcy courts the power to deny bad faith exemption amendments, then it would have added a provision to § 522.

*In re Bogan*, 534 B.R.346, 348-9. The *Bogan* court then adopts very much the same reasoning regarding the *Siegel* dicta that the Sixth Circuit did. The court finds the *Bogan* court's reasoning persuasive, and finds that the rule does not provide a statutory basis for the objection.

This court's ruling that the Bankruptcy Code allows even property fraudulently transferred to be the subject of an exemption raises concerns that debtors are being given a green light to commit fraud. However, the Trustee is not left without any remedy against intentional fraudulent transfers made in contemplation of bankruptcy. The Bankruptcy Code still provides remedies to defrauded creditors including the denial of discharge under 727(a)(1) or the

9

dischargeability of a particular debt under section 523(a)(2), dismissal of the case, or, if the fraud was in connection with the transfer of an asset, avoidance of the transfer and recovery of the asset. *In re Sumerell*, 194 B.R. 818, 839 (Bankr. E.D. Tenn. 1996). The debtor may temporarily gain a $10,000 exemption but find her ownership interest avoided and subject to turn over. She may face a judgment for the value of the transfer under 11 U.S.C. §§ 548 and 550(a) which is no longer dischargeable. The limitations on the amount of exemptions will also serve as a governor on run away debtors.

      The court notes that none of these remedies have been sought in the matter before the court. The deadline to object to discharge and dischargeability has passed. When the court asked the Trustee in closing argument about the avoidance of Mrs. Hurt's interest in the bank account for the benefit of Mr. Hurt's estate, the Trustee responded that he would not sue one joint estate for recovery from the other joint estate. Transfers between spouses in joint cases present additional procedural problems because the trustee must also consider whether he must lift the stay in one case to pursue the transfer made by the other joint debtor or whether there is any creditor who would actually benefit from such litigation. Given the size of the transfer involved, the court understands that such litigation might not be practical in this case. But such a remedy is available to a trustee where he believes he has the facts to justify the pursuit of a recovery in an adversary complaint under section 544 or 548 of the Bankruptcy Code.

      B. The Tennessee Basis for Objecting to an Exemption of Fraudulently Obtained Property

      Although the court has been unable to find a basis for his objection in section 522, the Trustee may still prevail if the state exemption provides the statutory basis. Tennessee has opted out of the federal exemptions. T.C.A. § 26-2-112. The exemption claim is being made under state law. "If state law exemptions are claimed, the court must refer to state law to determine

10

whether the conduct warrants denial of the exemptions." *In re Sumerell*, 194 B.R. 818, 836 (Bankr. E.D. Tenn. 1996) (citing 3 COLLIER ON BANKRUPTCY ¶ 522.08(15th Ed.1995)). The Trustee contends that Tennessee does have a statutory basis for disallowing this exemption. He relies on an exception to the personal property exemption which became effective in July of 2014, prior to the filing of the debtors' bankruptcy case.

>Tennessee Code Annotated § 26-2-103(a) states:
>
>Personal property to the aggregate value of ten thousand dollars debtor's equity interest shall be exempt from execution, seizure or attachment in the hands or possession of any person who is a bona fide citizen permanently residing in Tennessee. . . .  Such person may select for exemption the items of the owned and possessed personal property, including money and funds on deposit with a bank or other financial institution, up to the aggregate value of ten thousand dollars debtor's equity interest.

T.C.A. § 26-2-103(a).

>In 2014 subsection (b) was added which provides:
>
>An item shall not be eligible, in whole or in part, for the personal property exemption provided by this part, if the item has been purchased with or maintained by fraudulently obtained funds, or if ownership of the item has been maintained using fraudulently obtained funds. A court shall be required to find by a preponderance of evidence that an item was purchased with or maintained by funds obtained by defrauding another person or that ownership of an item was maintained by funds obtained by defrauding another person in order to disqualify the item from eligibility for the personal property exemption.

T.C.A. § 26-2-103(b).

Considering the facts before it, the court must determine whether the bank account which Mrs. Hurt is seeking to exempt is an item that was purchased with fraudulently obtained funds. The Trustee must prove by a preponderance of the evidence that she obtained funds by defrauding another person and used those funds to purchase the account. If he can, then she may not exempt the account. The statute is not clear about whether the person claiming the exemption must also be the person who committed the fraud. In this case Mrs. Hurt is the transferee of the

11

funds in question. The person who made the fraudulent transfer in fraud of his creditors is Mr. Hurt who is the transferor.  The court is not making a determination on that issue at this time because the court finds that the exclusion requires a showing of fraudulent intent, and the court does not find that the Trustee has met this burden by a preponderance of the evidence.

The court finds support for its conclusion that fraudulent intent is required by reviewing cases considering whether the conversion of nonexempt property into exempt property is a voidable conveyance that results in the disallowance of the exemption. *Hollins v. Webb*, 2 Tenn. Cas. (Shan.) 581, 583 (1877).  The *Hollins* case is cited in other Tennessee cases as authority for the proposition that conversion of property from non-exempt to exempt status is a fraud on creditors and will not be allowed. *Shanks v. Hardin*, 101 F.2d 177 (6th Cir. 1939) (citing *Maples v. Rawlins*, 105 Tenn. 457, 458, 58 S.W. 644 as a case citing *Hollins* for the proposition that "property subject to execution could not be converted into a homestead for the purpose and with the intent to defeat creditors of their debts."). In *Hollins*, the Tennessee Supreme Court had held that an assignment of personal property to create equity in real property that was the basis for the claim of a homestead exemption was not fraudulent because "the record disclosed no fraudulent intent as against the [transferee]." *Hollins*, 2 Tenn. Cas. (Shan.) at 582. Upon reconsideration, the court found that there were sufficient allegations to warrant imposing a lien on the exempted homestead property to protect the creditor.  The court relied on findings of "fraudulent misrepresentations and promises" made by the defendant and a stipulation between the defendant and his transferee designed to prevent the complainants from taking measures to collect their debt from the defendant's real and personal property. *Id.* at 582.  The Sixth Circuit in *Shanks* denied a homestead exemption claimed under Tennessee law to a debtor where the court found that a "debtor who in contemplation of bankruptcy converts 'property subject to execution, into a

12

homestead for the express purpose of defeating his creditors' has committed a fraud." *Shanks*, 101 F.2d at 178. This court interprets the use of the phrase "for the express purpose" as indicative of a finding of intent. The *Hollins* case and the Sixth Circuit's discussion of the issue was later discussed by Judge Lundin in *Gigandet v. Covington* (*In re Covington*) 171 B.R. 294, 296 (Bankr. M.D. Tenn. 1994). That case involved the avoidance of the transfer and the court applied the badges of fraud to "divine a debtor's fraudulent intent."

The requirement of intent also supports the bankruptcy policy that exemptions should be construed liberally in favor of the debtor. *In re Sumerell*, 194 B.R. 818, 832 and 836, n.30.

In determining whether intent has been shown, the debtors have not admitted that they created the two accounts and claimed the exemption for the express purpose of defeating their creditors. The Trustee must therefore rely on circumstantial evidence of their intent. The court may determine the existence of intent from the facts and circumstances of each case. Frequently, a showing of the existence of a number of the badges of fraud will suffice to demonstrate intent. *Weaver v. Nelms*. 750 S.W. 2d 158 (Tenn. Ct. App.1987).[2]

The Trustee has shown that the debtors were in precarious financial condition and had been so for some time. They knew that they were going to file bankruptcy and were waiting to file to maximize their exemptions. However, there was no creditor who had filed suit or who was

---

[2] "The Tennessee appellate courts have identified many "badges of fraud" to guide the trial courts in divining a debtor's intent for fraudulent conveyance purposes:
    1. The transferor is in precarious financial condition.
    2. The transferor knew there was or soon would be a large money judgment rendered against the transferor.
    3. Inadequate consideration for the transfer.
    4. Secrecy or hast in carrying out the transfer.
    5. A family or friendship relationship between the transferor and the transferee(s).
    6. The transfer included all or substantially all of the transferor's exempt property.
    7. Retention by the transferor of a life estate or other interest in the property transferred.
    8. Failure of the transferor to produce available evidence explaining or rebutting a suspicious transaction.
    9. Lack of innocent purpose or use for the transfer."
*Gigandet v. Covington (In re Covington)*, 171 B.R. 294, 297 (Bankr. M.D. Tenn. 1994).

garnishing their account or seeking a lien on Mr. Hurt's interest in the property. Mrs. Hurt acknowledges that she paid no consideration for the transfer of half of the sale proceeds, but this fact does not carry the weight it might have in another situation. Here, Mrs. Hurt had made significant monetary contributions to the parties' estates. She had been the primary breadwinner due to Mr. Hurt's unstable employment history in the three years before filing and their situation was worsened by medical expenses for their disabled child who needed care that was not covered by insurance. Although the debtors testified that they had maintained separate accounts throughout their marriage, they frequently transferred money between the two. Both had paid family bills from their separate accounts at the credit union. There is even some ambiguity about whether those accounts were in only one name based on the bank statement admitted at trial. (Tr. Ex. 6.) There may have been two accounts for convenience because they were not treated as strictly segregated property given the testimony about transfers between the accounts.

The Trustee emphasized that there was a very short time between the transfer to Mrs. Hurt and the bankruptcy filing. Such haste may be a factor, but it is usually coupled with some sort of secrecy or concealment. The court finds no evidence of concealment of the transfer.

Also in the Trustee's favor is the fact that the transfer was made to a close family member. Mr. and Mrs. Hurt were husband and wife. The transfer was also substantially all of Mr. Hurt's liquid assets; however, the court does not give this factor much weight in light of the small amount of liquid assets that either Mr. or Mrs. Hurt retained. The entire proceeds from the sale were less than their combined personal property exemptions. Finally the transferor retained the benefit of some of the retained money to the extent that he benefited from jointly owed bills paid by Mrs. Hurt.

Given these badges of fraud, the court finds that the Trustee has met his burden. The burden now shifts to the debtors to provide a reasonable explanation for the transfer other than to defraud their creditors. The debtors admitted that they waited to file bankruptcy until the real property was converted to personal property. They testified that they believed that property they received while they were married was held by both of them. They opened new accounts because they were concerned that creditors who had held the right to make automatic withdrawals prepetition would continue to take money out of their existing accounts. Mr. Hurt testified that his bankruptcy counsel suggested that he could open new accounts to prevent that from occurring. The court does not find that advice on how to prevent a violation of the automatic stay equates to advice to defraud creditors generally. When the sale proceeds arrived Mr. Hurt did open new accounts. He also testified that he intended to open new accounts which would operate in the same way as the accounts that they previously had – an account for each of them which would allow the transfer of funds between them. He then split the money 50/50.

He also testified that his failure to put both names on each account so that they could transfer money to one another was simply an oversight. They claimed that they had always intended the money to be jointly held.

The Trustee argues that this testimony is not credible. Mr. Hurt never quitclaimed a portion of his interest in the property to his wife during the two years after he inherited it. He put the money in accounts but made no effort to insure that they could transfer money between the accounts. The court did not find Mr. Hurt very knowledgeable about banking or forms of property ownership. He seemed genuinely surprised that his name appeared on his wife's account when he looked at the credit union statement. He does seem to have understood that he would keep more money if it was cash rather than real property, but he was also under the

impression that the funds were marital property in which each spouse had an interest. His action in creating two accounts seemed to be more a function of wanting to set up the same system for paying the family's bills that they had had before rather than an express purpose of defrauding his creditors. The parties seemed to be under the impression that they would be able to keep all of the proceeds whether they put it in a joint account or two separate accounts. The fact that a transfer occurred when the ownership of the proceeds changed from solely Mr. Hurt to joint ownership as tenants by the entireties or to each of them individually seems to have escaped the Hurts completely. In fact, if defrauding creditors had been their goal, they could have more easily concealed the transfer in a joint account or Mr. Hurt could have exempted more of the proceeds. The court finds that they viewed that everything they owned was marital property. The court finds their explanation believable. The court finds that the transfer was not made with the intent to defraud creditors.

Therefore, the Trustee has not shown by a preponderance of the evidence that the funds which Mrs. Hurt is seeking to exempt were fraudulently obtained. As such, the Trustee's objection to her exemption is overruled and the motion for turnover is denied.

A separate order shall enter.

The court read its opinion on December 17, 2015, and announced at that time that it would file a written memorandum following its announcement. The court reserved its right to make modifications with respect to style, grammar and citation. The court has made those modifications, and this memorandum supersedes its oral ruling.

###